

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN 0 8 2008

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA          )
                                  )     No. 07 CR 815—1    **JAN 0 8 2008**
vs.                               )     Judge Rebecca Pallmeyer
                                  )
JOHN SCHWAB                       )

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JOHN SCHWAB, and his attorney, ALAN BRUNELL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The information in this case charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341 and 1346 (Counts 1 and 2), and with willfully filing false joint U.S. Individual Income Tax Returns (Form 1040 with schedules and attachments) for calendar years 2003, 2004, and 2005 in violation of Title 26, United States Code, Section 7206(1) (Counts 8 through 10).

3.      Defendant has read the charges against him contained in the information, and the charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Ten of the information. Count One charges that on or about May 18, 2004, for the purpose

of executing a scheme to defraud, and attempting to do so, defendant knowingly caused to be placed in an authorized depository for mail matter an envelope containing Village of Bolingbrook check # 109216, addressed to Auto Tech & Tire Complete Auto Service, 126 Barbers Corner Road, Bolingbrook, Illinois 60440, in violation of Title 18, United States Code, Sections 1341 and 1346. Count Ten charges that on or about March 6, 2006, defendant willfully filed a false joint U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) for calendar year 2005, which was made and signed under penalty of perjury, and filed with the Internal Revenue Service, which defendant knew was not true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

6.      In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

7.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Ten of the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning in approximately the late 1990s and continuing until in or about April 2006, at Bolingbrook, and elsewhere in the Northern District of Illinois, Eastern Division, defendant, along with others known and unknown, devised and intended to devise, and participated in, a scheme and artifice to defraud the Village of Bolingbrook ("Village" or "Bolingbrook") of money, property and the intangible right to the honest services of defendant and Donald Ralls, who both served as Superintendent in the Village's Building and Fleet Division – a division of the Village's Public

2

Works Department – and to obtain money and property from the Village by means of materially false and fraudulent pretenses, representations, and promises.

Defendant began working for the Village of Bolingbrook, Illinois ("Village" or "Bolingbrook"), in approximately 1988, when he was employed by the Building and Fleet Division of the Public Works Department for the Village. The Building and Fleet Division maintained Village facilities and Village-owned vehicles, which maintenance included ordering cleaning supplies and automotive parts and performing repairs and maintenance tasks on facilities and vehicles. From approximately 1991 or 1992 until he retired in approximately June 2001, Donald Ralls was employed as the Superintendent of the Building and Fleet Division. After Ralls' retirement, from approximately July 2001 until approximately August 2002, defendant was the Acting Superintendent of the Building and Fleet Division, and from approximately August 2002 until March 2006, defendant served as Superintendent of the Building and Fleet Division. As Superintendant (and Acting Superintendent), Ralls and defendant were authorized to make purchases on behalf of Bolingbrook, approve purchases made by other Building and Fleet employees on behalf of Bolingbrook, and approve the submission of the invoices for these purchases for payment by the Village.

Beginning in approximately the late 1990s, defendant asked certain business owners who did business with the Building and Fleet Division to give him merchandise, services, and cash for his personal benefit, as set forth in detail below. The business owners acceded to the requests, and, at the direction of defendant, submitted false invoices to the Village in order to recoup the cost of the merchandise, services, and cash, and, as to several business owners, also to gain additional, unearned monies for themselves and their businesses. These false invoices contained either: (1) the personal

3

merchandise requested by defendant along with those items necessary for Village operations; (2) items that were never purchased; or (3) inflated prices for items that were purchased. Defendant knew that invoices submitted by the business owners at times contained items that were for personal use and at other times contained fictitious purchases and inflated prices, but he did not so inform the Finance Department and, thus, the invoices were paid by the Village.

South Harlem Auto Supply, Inc.

In the mid-1990s, when defendant served as the foreman of the Building and Fleet Division, Ralls introduced him to various business owners who conducted business with the Village, including Alan Guzzino of South Harlem Auto Supply, Inc. ("SHAS"). Ralls, Schwab, and Guzzino agreed that Guzzino would provide Ralls and Schwab with merchandise, monies, services, and other personal financial benefits while Guzzino would recoup the cost of such expenses, plus, at times, additional, unearned monies for himself and his business, by submitting false invoices to the Village. Beginning at that point and continuing after Ralls retired in 2001 and Schwab became Superintendent in 2002, and up until March 2006, Guzzino submitted invoices to the Village that contained either: (1) the personal merchandise requested by Ralls and/or Schwab along with items legitimately purchased by Village employees; (2) items that were never purchased; or (3) inflated prices for items that were purchased.

For those invoices that contained fictitious purchases or inflated prices, Guzzino provided Ralls and defendant with a "credit" representing 65-75% of the fictitious or inflated amount while retaining 25-35% for his own benefit. Guzzino kept an accounting of the "credit" provided to Ralls and defendant and allowed them to use the credit to: obtain items from SHAS, obtain cash payments, or use the SHAS' Advanta Business credit card to make personal purchases, such as clothing and

4

airline tickets. On at least one occasion, Ralls and defendant exceeded their "credit limit," causing Guzzino to submit additional invoices containing fictitious or inflated purchases to cover the excess amount.

Through the submission of fraudulent invoices to the Village, Guzzino and his business received improper payments from the Village in the amount of $180,000, of which Schwab was given approximately $120,000 and Ralls approximately $5,000 in the form of merchandise, services and cash payments. Guzzino kept approximately $55,000 for himself and his business.

## Merchant Supply Midwest, Inc.

In August 2001, defendant, serving as the acting Superintendent of the Building and Fleet Division, approached David Donaldson, owner of Merchant Supply Midwest, Inc. ("MSM"), a business that sold janitorial supplies to the Village since the early 1990's. Defendant sought cash payments from Donaldson and suggested that Donaldson recoup the costs of those payments, plus an additional amount of money for Donaldson, through the submission of invoices that contained fictitious purchases or inflated prices. The defendant and Donaldson agreed that Donaldson would pay the defendant 40% of the inflated or fictitious portion of the invoices while Donaldson would keep the remaining 60%. Through Donaldson's arrangement with defendant, from approximately August 2001 until March 2006, Donaldson and his business received improper payments from the Village in the approximate amount of $165,000, of which defendant was given approximately $66,000 in cash. Donaldson kept approximately $99,000 for himself and his business.

## Lindco Equipment Sales, Inc.

In approximately September 2002, defendant, serving as Superintendent of the Building and Fleet Division, approached Gary Lindesmith, owner of Lindco Equipment Sales, Inc. ("Lindco"),

5

a company that sold trucking equipment to the Village. Defendant sought trucking equipment for his personal use, free of charge, and suggested that Lindesmith recoup the costs of the requested equipment by submitting invoices containing fictitious purchases or inflated prices. In addition to the equipment, Lindesmith provided defendant with various entertainment expenses, which were also recouped by Lindesmith through the submission of fraudulent invoices. Further, defendant and other Village officials solicited Lindesmith for contributions to political campaigns and charities, and defendant encouraged Lindesmith to recoup all of these contributions through the submission of fraudulent invoices to the Village. Through his arrangement with defendant, Lindesmith and his business received improper payments from the Village in the approximate amount of $24,000, of which defendant was given approximately $7,000 in the form of merchandise and services, while Lindesmith retained approximately $17,000 for himself and his business.

## Auto Tech & Tire Complete Auto Service

In approximately mid-2004, defendant spoke with Murteza Gazaferi and Ahmet Rusid, the co-owners of Auto Tech & Tire Complete Auto Service ("Auto Tech"), a business that provided automotive repair services to Village vehicles. Defendant sought cash payments from Gazaferi and Rusid, and suggested that the business owners recoup the costs of those payments plus an additional amount of money for themselves and their business through the submission of invoices that contained fictitious purchases or inflated prices. Gazaferi and Rusid agreed, and they thereafter submitted to the Village invoices that contained either charges for services and parts that were not provided, or inflated prices for services and parts that were provided. Gazaferi and Rusid then shared with defendant the ill-gotten gains resulting from the submission of fraudulent invoices – with Gazaferi and Rusid keeping 80% of the "over-payments" from the Village, while giving defendant

6

the other 20% in cash payments. On several occasions, Gazaferi and Rusid retained 60% of the over-payment from the Village and gave defendant 40% through a cash payment. Through this arrangement, Gazaferi and Rusid received improper payments from the Village in the approximate amount of $30,000, of which defendant was given approximately $6,000 in the form of cash payments, while Gazaferi and Rusid retained approximately $24,000 for themselves and their business.

On or about May 18, 2004, for the purpose of executing the aforementioned scheme to defraud, and attempting to do so, defendant knowingly caused to be placed in an authorized depository for mail matter an envelope containing Village of Bolingbrook check # 109216, addressed to AutoTech & Tire Complete Auto Service, 126 Barbers Corner Road, Bolingbrook, Illinois 60440, in violation of Title 18, United States Code, Sections 1341 and 1346.

As a result of the above-described fraudulent scheme perpetrated by the defendant and others, from approximately the late 1990s through 2006, the Village of Bolingbrook suffered losses in the amount of approximately $404,000, through the submission of fraudulent invoices.

Further, defendant admits he was aware that during 2005, he was receiving merchandise, services and cash payments in the amount of approximately $83,984 from business owners who did business with the Village of Bolingbrook. By failing to disclose to his tax return preparers the income received from these business owners, defendant caused his tax return preparers to prepare a false federal income tax return, Form 1040 (with schedules and attachments), for calendar year 2005.

Defendant further acknowledges that on or about March 6, 2006, as charged in Count 10 of the information, he willfully made and subscribed, and caused to be made and subscribed, a joint

7

U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2005, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which income tax return he did not believe to be true and correct as to every material matter, in that defendant listed his total income on Line 22 as being $71,140, whereas, in truth and fact, as the defendant well knew, his total income was substantially in excess of said amount.

8.     Defendant, for purposes of computing his sentence under Guideline §1B1.2, stipulates to having committed the following additional offense(s):

(a)     He willfully filed a false joint U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2003, which was made and signed under penalty of perjury, and filed with the Internal Revenue Service, which defendant knew was not true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

Specifically, defendant admits that on or about April 15, 2004, he willfully made and subscribed and caused to be made and subscribed, a joint United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2003, which return was verified by a written declaration that it was made under the penalties of perjury, and filed with the Internal Revenue Service. Defendant further admits that at the time he signed the Form 1040 for the calendar year 2003, defendant did not believe it to be true and correct as to every material matter contained therein. Specifically, defendant admits that the return states on line 22 of Form 1040 that the total income of the defendant and his wife was $71,021, whereas the defendant then knew and believed that he had failed to disclose at least an additional $46,525 in income he received in the

8

form of merchandise, services and money from business owners who conducted business with the Village of Bolingbrook

(b)     He willfully filed a false joint U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2004, which was made and signed under penalty of perjury, and filed with the Internal Revenue Service, which defendant knew was not true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

Specifically, defendant admits that on or about April 1, 2005, he willfully made and subscribed and caused to be made and subscribed, a joint United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2004, which return was verified by a written declaration that it was made under the penalties of perjury, and filed with the Internal Revenue Service. Defendant further admits that at the time he signed the Form 1040 for the calendar year 2004, defendant did not believe it to be true and correct as to every material matter contained therein. Specifically, defendant admits that the return states on line 22 of Form 1040 that the total income of the defendant and his wife was $71,775, whereas the defendant then knew and believed that he had failed to disclose at least an additional $47,643 in income he received in the form of merchandise, services and money from business owners who conducted business with the Village of Bolingbrook

( c)     He, along with others known and unknown, devised and intended to devise, and participated in, a scheme and artifice to defraud the Village of Bolingbrook of money, property and the intangible right to the honest services of defendant and other employees of the Village's Public Works Department and to obtain money and property from the Village by means of materially false and fraudulent pretenses, representations, and promises, and material omissions.

9

Specifically, from approximately the mid-1990's until March 2006, defendant and other Village of Bolingbrook employees, knowing that Bolingbrook funds were not to be used to purchase personal items, used Village credit cards and Village open purchase orders to purchase personal items and did not indicate on receipts or other procurement paperwork that the items were personal, knowing that Bolingbrook funds were used to pay for the balances due on Village credit cards and Village purchase orders.

From July 2001 until March 2006, defendant, as either the acting or permanent Superintendent of the Building and Fleet Division, approved the submission of receipts, invoices, and other procurement paperwork to the Village's Finance Department for payment with Bolingbrook funds, well knowing that many of the receipts, invoices, and other procurement paperwork contained expenses for personal items that were obtained by defendant and by other employees of the Public Works Department and that were not to be paid for with Bolingbrook funds. Defendant did not indicate that certain items included on the receipts, invoices, and other procurement paperwork were for personal use.

In addition, defendant met, usually on a weekly basis, with other Bolingbrook municipal employees and others at the Village-owned garage used by the Building and Fleet Division, during which gatherings, defendant, along with others, socialized and worked on personal cars and vehicles, using the garage facilities and using automotive supplies purchased and stocked by the Village of Bolingbrook.

As a result of this scheme, the Village of Bolingbrook was defrauded of a total of approximately $62,000 in wrongful payments on receipts and invoices.

10

On or about January 10, 2006, defendant, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter an envelope containing Village of Bolingbrook check # 119414, and addressed to Grainger, 7591 Brushhill Road, Burr Ridge, Illinois 60527, in violation of Title 18, United States Code, Sections 1341 and 1346.

9.     The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

10.    Defendant understands that the charges to which he is pleading guilty carries the following statutory penalties:

a.     Count One carries a maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

b.     Count Ten carries a maximum sentence of 3 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, which are estimated to be $500. Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

11

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each of the charges to which he has pled guilty, in addition to any other penalty or restitution imposed.

d.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 23 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offense charged in Count One (if it is greater than $250,000) plus $250,000, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

11.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

12.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    With regard to Count One:

12

A.     The base offense level for fraud involving the deprivation of the intangible right to honest services of public officials charged in Count One is 14, pursuant to Guideline §2C1.1(a)(1).

B.     Pursuant to Guideline § 2C1.1(b)(2) and 2B1.1(b)(1)(H), the base offense level for the offense of conviction is increased 14 levels because the amount of loss to Village attributable to defendant's offense of conviction and relevant conduct was more than $400,000 but less than $1,000,000.

C.     Pursuant to Guideline § 2C1.1(b)(3), the base offense level for the offense of conviction is increased 4 levels because the offense involved a public official in a high-level decision-making position.

ii.     With regard to Count Ten:

A.     The base offense level for the filing of a false income tax return is calculated by reference to the tax loss involved. USSG §§ 2T1.1, 2T4.1. The tax loss in Count Ten is $22,789, which is more than $12,500 but not more than $30,000, for a base level offense of 12. USSG § 2T4.1(D).

B.     Pursuant to Guideline § 2T1.1(b)(1), the base offense level for the stipulated offense is increased by 2 levels because the defendant failed to report the source of income exceeding $10,000 during 2005.

iii.     With regard to the first stipulated offense:

A.     The base offense level for the filing of a false income tax return is calculated by reference to the tax loss involved. USSG §§ 2T1.1, 2T4.1. The tax loss for the first

13

stipulated offense (tax year 2003) is $12,417, which is more than $5,000 but less than $12,500, for a base level offense of 10. USSG § 2T4.1( C).

      B.     Pursuant to Guideline § 2T1.1(b)(1), the base offense level for the stipulated offense is increased by 2 levels because the defendant failed to report the source of income exceeding $10,000 during 2003.

      iv.     With regard to the second stipulated offense:

      A.     The base offense level for the filing of a false income tax return is calculated by reference to the tax loss involved. USSG §§ 2T1.1, 2T4.1. The tax loss for the second stipulated offense (tax year 2004) is $12,471, which is more than $5,000 but less than $12,500, for a base level offense of 10. USSG § 2T4.1( C).

      B.     Pursuant to Guideline § 2T1.1(b)(1), the base offense level for the stipulated offense is increased by 2 levels because the defendant failed to report the source of income exceeding $10,000 during 2004.

      v.     With regard to the third stipulated offense:

      A.     The base offense level for fraud involving the deprivation of the intangible right to honest services of public officials charged in Count Seven is 14, pursuant to Guideline §2C1.1(a)(1).

      B.     Pursuant to Guideline § 2C1.1(b)(2) and 2B1.1(b)(1)(H), the base offense level for the offense of conviction is increased 6 levels because the amount of loss to Village attributable to defendant's offense of conviction and relevant conduct was more than $30,000 but less than $70,000.

14

vi.      Pursuant to Guideline § 3D1.2(d), the offense of Count One and the third stipulated offense are grouped together, and pursuant to Guideline § 3D1.3(b), the offense level applicable to this group is 32.

vii.     Pursuant to Guideline § 3D1.2(d), the offense of Count Ten and the first and second stipulated offenses are grouped together, and pursuant to Guideline § 3D1.3(b), the offense level applicable to this group is 16.  USSG § 2T4.1(E); USSG 2T1.1(b)(1).

viii.    Pursuant to Guideline § 3D1.4, the offense level applicable to the Group with the highest offense level is 32.  Further, pursuant to Guideline § 3D1.4, the second Group is disregarded because it is more than nine levels less serious than the Group with the highest offense level.

ix.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a 2-level reduction in the offense level is appropriate.

x.      In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior

15

to determining that defendant is entitled to a 2-level reduction for acceptance of responsibility, the government will move for an additional 1-level reduction in the offense level.

      c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 29, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      f.    Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing

16

Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

13.    Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

14.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart from the applicable Guideline range and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

15.    If the government moves the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth in the preceding paragraph, this Agreement

17

will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 40 percent of the low end of the applicable guideline range. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

16.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

17.    Regarding restitution, the parties acknowledge that  pursuant to Title 18, United States Code, § 3663A, the court must order defendant, together with any jointly liable co-defendants, to make full restitution to the Village of Bolingbrook in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

18

18.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Forfeiture

19.     The information charges that defendant and other named co-defendants are liable to the United States for approximately $404,000, which funds are subject to forfeiture because those funds constitute proceeds of the violations charged in Counts One through Seven of the information. By entry of a guilty plea to Count Seven of the information, defendant acknowledges that the property identified above is subject to forfeiture.

20.     Defendant agrees to the entry of a forfeiture judgment against him in the amount of $461,000.  Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in these funds and further agrees to the seizure of these funds so that these funds may be disposed of according to law.  Defendant is unaware of any third party who has an ownership interest in, or claim to, the property subject to forfeiture and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third-party in the event a third party files a claim.

21.     Defendant understands that forfeiture of property generally is not to be treated as satisfaction of any restitution the Court may impose upon defendant in addition to the forfeiture judgment.  It is agreed by the parties, however, that forfeiture of funds and any other payments made toward satisfaction of the forfeiture judgment shall be credited to the outstanding restitution obligation.

## Presentence Investigation Report/Post-Sentence Supervision

19

22.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation. .

23.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient

20

evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

25.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 815.

26.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

27.    Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant and his spouse or defendant's partnership or corporations.

### Waiver of Rights

28.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more

21

members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

        **b.**        **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i.        The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

22

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.      **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral

23

attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

     d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

29.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

30.    Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and his spouse which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

## Conclusion

31.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

32.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this

24

Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

33.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

34.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

35.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _1-8-08_

PATRICK J. FITZGERALD
United States Attorney

LAURIE BARSELLA
Assistant U.S. Attorney

JOHN SCHWAB
Defendant

ALAN BRUNELL
Attorney for Defendant

25